

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

ENTERED
12/09/2020

| | | |
|---|---|---|
| IN RE: | § | |
| USA PROMLITE TECHNOLOGY INC | § | **CASE NO: 18-36893** |
|     Debtor | § | |
| | § | **CHAPTER 7** |
| | § | |
| USA PROMLITE TECHNOLOGY, INC. | § | |
|     Plaintiff | § | |
| | § | |
| VS. | § | **ADVERSARY NO. 19-3331** |
| | § | |
| AMERICAN FIRST NATIONAL BANK, *et al* | § | |
| | § | |
|     Defendants | | |

## <u>MEMORANDUM OPINION</u>

The City of Hidalgo filed its Plea to the Jurisdiction, Motion to Dismiss for Lack of Subject Matter Jurisdiction, Motion to Dismiss Pursuant to Rule 12(b) and Dismiss Pursuant to the City of Hidalgo's Governmental Immunity.[1] On November 16, 2020, the Court held a hearing on the Motion to Dismiss. For the reasons explained below, this Court grants the City of Hidalgo's Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(1).

### I.   <u>BACKGROUND</u>

The City of Hidalgo ("*City of Hidalgo*" or "*the City*") is a home rule municipality in the Rio Grande Valley.[2] In 2013, the City entered into a contract with U.S.A. Promlite Technology, Inc. ("*Promlite*") for the retrofitting and installation of LED lights in all city buildings, streets lamps, parking lots, and the State Farm Arena (now known as the Payne Arena) and other government-owned spaces.[3] Disputes over the contract arose and Promlite sued the City in the Hi-

---

[1] ECF No. 59.
[2] *Id.* at 2.
[3] *Id.* at 2 and Ex 1.

dalgo County State District Court for breach of contract and asserted quasi-contractual equitable claims for unjust enrichment and quantum meruit.[4]

American First National Bank ("*AFNB*" and together with Promlite, "*Plaintiffs*") filed a Petition in Intervention claiming that it received an assignment from Promlite as to the breach of contract claim against the City.[5]  This was purportedly part of the loan agreement between AFNB and Promlite.[6]  The City was not a party to this loan and is not in privity of contract with AFNB.[7] The State District Court granted summary judgment against AFNB's intervention claim.[8]  Subsequently, Promlite filed for bankruptcy on December 6, 2018.[9]  Promlite then filed a Notice of Removal of the state court action against the City of Hidalgo[10] and later, AFNB filed a Motion for Reconsideration of the State Court's Order Granting Summary Judgment.[11]  This Court dismissed the state court summary judgment order and allowed AFNB to proceed under a "partial assignment."[12]

In its Second Amended Original Complaint ("*Complaint*"), Promlite pled the following causes of action: (i) breach of contract; (ii) unjust enrichment; and (iii) quantum meruit.[13]  Seeking dismissal of all three claims, the City of Hidalgo filed its Plea to the Jurisdiction, Motion to Dismiss for Lack of Subject Matter Jurisdiction, Motion to Dismiss Pursuant to Rule 12(b) and Dismiss Pursuant to the City of Hidalgo's Governmental Immunity ("*Motion to Dismiss*" or "*Motion*").  In response, Promlite and AFNB filed their Joint Response to the City of Hidalgo's Mo-

---

[4] *Id.* at 3; ECF No. 9-8.
[5] ECF No. 59 at 3.
[6] *Id.*
[7] *Id.*
[8] ECF No. 11-12.
[9] Case No. 18-36893.
[10] ECF No. 1.
[11] ECF No. 14.
[12] ECF No. 37.
[13] ECF No. 9-8.

tion to Dismiss ("*Joint Response*").[14]  A hearing on the Motion to Dismiss was held on November 16, 2020, and the Court now issues the instant Memorandum Opinion.

## II.      JURISDICTION

### A.  Jurisdiction to Consider the City of Hidalgo's Motion to Dismiss

#### 1.   Arising In and Arising Under Jurisdiction

This Court lacks both arising in and arising under jurisdiction because none of Plaintiffs' causes of action are created or determined by title 11 nor do they arise *only* in bankruptcy.[15]  Under 28 U.S.C. § 157(a), "[b]ankruptcy judges may hear and determine all cases under title 11 and all core proceedings *arising under* title 11, or *arising in* a case under title 11 . . . ."[16]  For jurisdiction to "arise under" title 11, the cause of action asserted by the plaintiff must be either created or determined by title 11.[17]  "Arising under" jurisdiction requires that the proceeding "invoke a substantive right provided by [the Bankruptcy Code]."[18]  "Arising in" jurisdiction requires that the proceeding "would have no existence outside of the bankruptcy," where the asserted causes of action are not based on any provision of the Bankruptcy Code.[19]

None of Plaintiffs' causes of action in this case arise under or arise in title 11.[20]  Plaintiffs' claims for breach of contract, quantum meruit, and unjust enrichment were initiated in state court.[21]  Plaintiffs' breach of contract claim arises under the Texas Business and Commerce Code and the two related quasi-contractual equitable doctrines of unjust enrichment and quantum

---

[14] ECF No. 61.
[15] *Wood v. Wood (In re Wood)*, 825 F.2d 90, 96 (5th Cir. 1987) (alteration in original).
[16] Emphasis added.
[17] *In re Wood*, 825 F.2d at 96.
[18] *EOP-Colonnade of Dallas Ltd. P'ship v. Faulkner (In re Stonebridge Techs., Inc.)*, 430 F.3d 260, 267 (5th Cir. 2005).
[19] *In re Wood*, 825 F.2d at 880.
[20] *See, e.g.*, *Apache Corp. v. Castex Offshore, Inc. (In re Castex Energy Partners, LP)*, 584 B.R. 150, 155, 157 (Bankr. S.D. Tex. Feb. 1, 2018) (finding that plaintiff's breach of contract claim and defendant's counter claims were state law claims not brought under title 11) (citing *In re Petroleum Products & Serv., Inc.*, 556 B.R. 296, 302 (Bankr. S.D. Tex. 2016)).
[21] ECF No. 59, Ex. 4.

meruit, arise under Texas common law.[22]   Plaintiffs do not argue that any of their claims are based on substantive rights provided by the Bankruptcy Code and this Court does not find any such rights relevant to this proceeding.   Additionally, this case landed in this Court only because Promlite filed a Notice of Removal based on its underlying bankruptcy case.[23]   If not for Promlite's bankruptcy, the claims asserted could have been adjudicated on the merits in the state court.[24]   Lacking "arising under" or "arising in" jurisdiction, the Court turns to whether it has "related to" jurisdiction pursuant to 28 U.S.C. § 1334(b).

### 2.   Related to Jurisdiction

This Court has related to jurisdiction pursuant to 28 U.S.C. § 157(c)(1), which provides "[a] bankruptcy judge may hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11."   A proceeding is "related to" a case under title 11 "when the outcome of that proceeding could *conceivably* have any effect on the estate being administered in bankruptcy."[25]   In other words, "if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate."[26]   Here, Promlite is the debtor in the underlying Chapter 7 bankruptcy case.[27]   The outcome of this adversary proceeding could conceivably impact the administration of Promlite's bankruptcy case because if it prevails in the instant suit

---

[22] *See* ECF No. 14-2; *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 740 (Tex. 2005) (recognizing quantum meruit as an equitable remedy adjudicated in Texas courts); *Fortune Prod. Co. v. Conoco, Inc.*, 52 S.W.3d 671, 683–84) (recognizing unjust enrichment as an equitable remedy adjudicated in Texas courts).

[23] See ECF No. 1 at 2.

[24] *See In re Castex Energy Partners, LP*, 584 B.R. at 155 (finding that because the suit was originally filed in state court and the breach of contract claim and counterclaims asserted were based on state law, the suit could have proceeded to the merits of the claims in state court.).

[25] *Walker v. Cadle Co. (In re Walker)*, 51 F.3d 562, 569 (5th Cir. 1995) (alteration in original) (citations omitted).

[26] *Id.* (citing *In re Majestic Energy Corp.*, 835 F.2d 87, 90 (5th Cir. 1988)); *see also, e.g.*, *Edge Petroleum Operating Co. v. GPR Holdings, L.L.C. (In re TXNB Internal Case)*, 483 F.3d 292, 298 (5th Cir. 2007); *Celotex Corp. v. Edwards*, 514 U.S. 300, 308 (1995) (holding that "the 'related to' language of § 1334(b) must be read to give district courts (and bankruptcy courts under § 157(a)) jurisdiction over more than simply proceedings involving the property of the debtor or the estate.").

[27] Case No. 18-36893.

and is awarded any of the $3,697,717.90 it asks for,[28] that money will become property of the estate pursuant to 11 U.S.C. § 541(a) and be subject to the $1,817,377.73 in liabilities Promlite disclosed on its latest schedules.[29]   Any money potentially won in a lawsuit such as this one conceivably has an effect on administration of the bankruptcy estate.[30]

### B. Authority to Enter a Final Order

The City of Hidalgo's Motion to Dismiss requests that this Court dismiss Plaintiffs' causes of action pursuant to, inter alia, Federal Rules of Civil Procedure 12(b)(1), 12(b)(4), and 12(b)(6).   Federal Rule 12 applies to this adversary proceeding pursuant to Federal Rule of Bankruptcy Procedure 7012.   Rule 12(h)(3) mandates that "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."[31]   Because "[i]t is incumbent on all federal courts to dismiss an action whenever it appears that subject matter jurisdiction is lacking," this Court must enter an order dismissing this suit if it finds its lacks jurisdiction to adjudicate Plaintiffs' claims.[32]   However, should the Honorable United States District Court find that the Bankruptcy Court did not have authority to enter a final order, this Court requests that the Honorable United States District Court convert this Memorandum Opinion into a Report and Recommendation.

### III.  ANALYSIS

### A. The City of Hidalgo's Motion to Dismiss

In its Motion, the City of Hidalgo asks this Court to dismiss Plaintiffs' Complaint for

---

[28] Case No. 19-3331, ECF No. 9-8.
[29] Case No. 18-36893, ECF No. 48 at 16.  In its schedules, Promlite discloses that its only assets are $1,000 in cash this cause of action, and a cause of action for an unknown amount against Edinburg Consolidated Independent School District.
[30] *See Beitel v. OCA, Inc. (In re OCA, Inc.)*, 551 F.3d 359, 367 (5th Cir. 2008) (finding that the adversary proceeding could have an affect on the bankruptcy estate because a judgment against the defendant would increase the estate).
[31] FED. R. CIV. P. 12(h)(3); FED. R. BANKR. P.7012.
[32] *Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998); *see also Smith v. Houston Indep. Sch. Dist.*, 229 F. Supp. 3d 571, 575 (S.D. Tex. 2017).

several reasons.  First, the City argues that this Court lacks subject matter jurisdiction because it is entitled to governmental immunity and that immunity has not been waived.[33]  Thus, the City concludes, this Court must dismiss the suit pursuant to Federal Rule of Civil Procedure 12(b)(1).[34]  Alternatively, the City argues that if this Court does not dismiss the Complaint pursuant to Rule 12(b)(1) on the basis of governmental immunity, then the Court  should dismiss the Complaint  pursuant to Rule 12(b)(6) on the same basis because governmental immunity prohibits Plaintiffs from asserting a claim upon which relief can be granted.[35]  Alternatively, the City contends that the Complaint should be dismissed because the contract, made the basis of Promlite's Complaint, is void, unconstitutional, and unenforceable because it creates a debt without establishment of a sinking fund, as required by the Texas Constitution.[36]  That, it concludes, requires dismissal as a matter of law.[37]  Finally, the City asks this Court to dismiss the Complaint pursuant to Rule 12(b)(4) because it alleges that service of process was not made to the correct person under state or federal law.[38]

As a preliminary matter, this Court must determine whether it has subject matter jurisdiction over this Complaint before it can proceed to Plaintiffs' other bases for dismissal.[39]  "The requirement that subject matter jurisdiction be established as a threshold matter is inflexible and without exception for subject matter jurisdiction is power to declare the law and without subject

---

[33] *Id.* at 8-11.
[34] *Id.* at 6–7.
[35] *Id.* at 11–12.
[36] *Id.* at 13–14.
[37] *Id.* at 14.
[38] *Id.* at 14–15.
[39] *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 512 (5th Cir. 1980) ("If the allegations do not survive the jurisdictional attack, then there is no jurisdiction to even consider the other claims, much less to entertain a Rule 12(b)(6) motion to dismiss those claims."); *see also Ruhrgas Ag v. Marathon Oil Co.*, 526 U.S. 574, 577 (1999) ("[W]ithout jurisdiction the court cannot proceed at all in any cause.") (quoting *Ex parte McCardle*, 74 U.S. 506, 514 (1869)).

matter jurisdiction the court cannot proceed at all in any cause."[40]  If subject matter jurisdiction

cannot be established, then there is no jurisdiction to entertain a Rule 12(b)(6) motion to dismiss

Plaintiffs' claims or the contracts validity under the Texas Constitution[41] and the City's Motion

for insufficient process pursuant to Rule 12(b)(4) becomes moot.[42]  Furthermore, a lack of sub-

ject matter jurisdiction, or a decision not to exercise subject matter jurisdiction, would implicate

the futility of allowing the plaintiff leave to amend the complaint.[43]  Because the City's Motion

challenges this Court's subject matter jurisdiction pursuant to Rule 12(b)(1), this Court must ad-

dress this challenge before proceeding to any of the alternative bases the City has raised for dis-

missal of the instant Complaint.[44]

### B.  Standard of Review for Federal Rule of Civil Procedure 12(b)(1)

Under Federal Rule of Civil Procedure 12(b)(1),[45] this Court must dismiss the complaint

if it finds that it lacks subject matter jurisdiction to hear the dispute.[46]  "A case is properly dis-

missed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional

---

[40] *Ruhrgas*, 526 U.S. at 577 (internal quotation marks, punctuation, and citations omitted).

[41] *Menchaca*, 613 F.2d at 512 ("If the allegations do not survive the jurisdictional attack, then there is no jurisdiction to even consider the other claims, much less to entertain a Rule 12(b)(6) motion to dismiss those claims.").

[42] *See, e.g.*, *Lablanche v. Spring Isd*, 2017 U.S. Dis. LEXIS 220527, at *14 (S.D. Tex. June 23, 2017) (finding that because certain claims were dismissed pursuant to Rule 12(b)(1) the motions to dismiss those claims pursuant to Rules 12(b)(4), 12(b)(5), and 12(b)(6) were moot); *Sharpe v. Roman Catholic Diocese of Dallas*, 2002 U.S. Dist. LEXIS 18217, at *18 n.4 (finding that because the complaint was dismissed under Rule 12(b)(1), the defendants' motions for dismissal under Rule 12(b)(4) were moot); *Texas v. Armstead*, 2015 U.S. Dist. LEXIS 174149, at *6 n.1 (N.D. Tex. ec. 4, 2015) (declining to address plaintiff's 12(b)(4) ground for dismissal because magistrate judge was recommending the case be dismissed pursuant to Rule 12(b)(1)).

[43] *Briggs v. Mississippi*, 331 F.3d 499, 508 (5th Cir.2003); *see also Khan v. College of Mainland*, 2014 U.S. Dist. LEXIS 72345, at *1 (S.D. Tex. May 28, 2014).

[44] *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (citing *Hitt v. Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977)); *see also Land & Bay Gauging, L.L.C. v. Shor*, 623 Fed. App'x 674, 678 (5th Cir. 2015) ("Because the applicability of the *Rooker-Feldman* doctrine is jurisdictional, we must decide this issue first before analyzing under Rule 12(b)(6) the merits of any claims over which we have jurisdiction.") (citation omitted).

[45] FED. R. BANKR. P. 7012(b) (providing that Federal Rule of Civil Procedure 12 applies in adversary proceedings).

[46] The Court notes that it has the jurisdiction to determine whether it has subject matter jurisdiction over the dispute at bar.  *See Henry v. United States*, 277 Fed. App'x. 429, 434 n.11 (5th Cir. 2008) ("A court always has jurisdiction to consider its jurisdiction . . . .") (citing *Chicot County Drainage Dist. v. Baxter State Bank*, 308 U.S. 371, 376 (1940) (holding that a federal court has authority to determine whether it has subject matter jurisdiction over a dispute)); *Trevino v. Michelin N. Am., Inc.*, 2006 WL 778609, at *8 (S.D. Tex. Mar. 23, 2006) ("The court has the authority to pass upon its own jurisdiction . . . .") (quoting *Chicot County Drainage Dist.*, 308 U.S. at 376).

power to adjudicate the case."[47]   Here, the City alleges that this Court is without subject matter jurisdiction to consider the instant causes of action because the City has not waived its governmental immunity.[48]   A defendant's correct assertion of governmental immunity is reason to grant a motion to dismiss under Rule 12(b)(1) because the court lacks subject matter jurisdiction to adjudicate the dispute.[49]   In deciding a motion to dismiss under Rule 12(b)(1), a court may consider matters outside the pleadings.[50]   "Ultimately, a motion to dismiss for lack of subject matter jurisdiction should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief."[51]   In the case at bar, the Court's jurisdiction over Plaintiffs' claims against the City is indisputable *unless* the City is in fact entitled to claim sovereign immunity.   If the claim of immunity is valid, then dismissal must be granted.[52]

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) is characterized as either facial or factual.[53]   A facial attack is based solely upon the complaint itself, whereas a factual attack challenges the existence of the subject matter jurisdiction in fact, and is irrespective of the pleadings.[54]   This means matters outside the pleadings—such as testimony and affidavits—are considered in a factual attack challenge.[55]   Although not expressly stated, the City's Motion to Dismiss raises a facial attack because it is based solely upon Promlite's Complaint, and does not contain affidavits, testimony, or other evidentiary material.

---

[47] *Champions Truck & Equip. Inc. v. Patterson*, 2008 WL 2810608, at *1–2 (S.D. Tex. July 21, 2008) (quoting *Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998)).
[48] ECF No. 59 at 5–6.
[49] *See Springboards to Educ., Inc. v. Houston Indep. Sch. Dist.*, 2017 U.S. Dist. LEXIS 221322, at *5–6 (S.D. Tex. Sept. 20, 2017) (granting the school district's Rule 12(b)(1) motion to dismiss because it was entitled to governmental immunity).
[50] *See Montez v. Dep't of Navy,* 392 F.3d 147, 149 (5th Cir.2004)
[51] *Ramming*, 281 F.3d at 161.
[52] *See* TEX. LOC. GOV'T CODE § 271.156 ("This subchapter does not waive sovereign immunity to suit in federal court."); *see also* FED. R. CIV. P. 12(h)(3).
[53] *Menchaca*, 613 F.2d at 511.
[54] *Id.*
[55] *Id.*

Consequently, this Court has the power to dismiss for lack of subject matter jurisdiction on any one of three separate bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the Court's resolution of disputed facts.[56]  The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting that subject matter jurisdiction exists; here, plaintiff, Promlite, and intervenor, AFNB.[57]  If Promlite and AFNB cannot carry that burden, then this Court must dismiss the suit.[58]

**Whether governmental immunity requires this suit to be dismissed.**

When an arm of government or its officers are sued, a court must consider whether that entity is entitled to immunity, thereby compelling dismissal of the suit.  There are two related, but distinct types of immunity: sovereign immunity and governmental immunity.[59]  Sovereign immunity applies to the states and its various entities while governmental immunity protects local units of government, such as cities, when they perform governmental functions.[60]

The Eleventh Amendment of the United States Constitution strips federal courts of jurisdiction over suits against states, unless a state waives immunity.[61]  Eleventh-Amendment immunity applies only to states and their agencies, not to units of local government, such as cities.[62]  Employing the Eleventh Amendment in this case would be erroneous because Plaintiffs sued the City of Hidalgo, not the state of Texas.  Thus, state law determines whether the City enjoys im-

---

[56] *Id.* at 413.
[57] *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001); *see also, e.g.*, *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001); *Patterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981).
[58] *Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998).
[59] *City of Westworth Vill. v. City of White Settlement*, 558 S.W.3d 232, 240 (Tex. App.—Fort Worth Aug. 9, 2018, pet. denied) (citing *Travis Cent. Appraisal Dist. v. Norman*, 342 S.W.3d 54, 57–58 (Tex. 2011)).
[60] *Id.* (citing *Travis Cent. Appraisal Dist.*, 342 S.W.3d at 57–58).
[61] *Sissom v. Univ. of Tex. High Sch.*, 927 F.3d 343, 347 (5th Cir. 2019).
[62] *Id.*; *see also Board of Trustees v. Garrett*, 531 U.S. 356, 369 (2001) (finding that while local governments are "'state actors' for the purposes of the Fourteenth Amendment," the immunity found in the Eleventh Amendment does not extend "to units of local government.").

munity from suit in federal court for the causes of action asserted by Plaintiffs.

Under Texas law, "a city is not a freestanding sovereign with its own inherent immunity."[63]  When, and only if, a city is "acting as the State's agent and performing governmental functions for the public benefit," does it enjoy immunity.[64]  A state's immunity does not trickle down to a city performing proprietary functions because those "are not performed under the authority, or for the benefit, of the sovereign."[65]  And the Texas Supreme Court has held that the governmental-proprietary dichotomy applies to contract claims.[66]  Thus, this Court must determine whether the City of Hidalgo was carrying out a governmental or proprietary function in contracting with Promlite for the retrofitting and installation of LED lights in government-owned buildings and spaces.

If this Court determines that the City of Hidalgo was acting in its governmental capacity when it contracted with Promlite, then dismissal is warranted.  As pointed out by the City, a city otherwise immune from suit may waive that immunity pursuant to chapter 271 of the Texas Local Government Code, but nothing in subchapter I, the subchapter controlling in this case, "waive[s] sovereign immunity to suit in federal court."[67]  Conversely, if this Court determines that the City was acting in a proprietary capacity, then it is not entitled to immunity and the City "has the same duties and liabilities as those incurred by private persons or corporations."[68]

When it contracted with Promlite for the retrofitting and installation of LED lights in all city buildings, streets lamps, parking lots, and the State Farm Arena, the City argues that it was

---

[63] *Wasson Interests, Ltd. v. City of Jacksonville*, 489 S.W.3d 427, 433 (Tex. 2016); *see also Reynolds v. Sims*, 377 U.S. 533, 575 (1964) ("Political subdivisions of States—counties, cites, or whatever—never were and never have been considered as sovereign entities.").
[64] *Id.* (citing *City of Galveston v. State*, 217 S.W.3d 466, 478 (Tex. 2007) (Willett, J., dissenting)).
[65] *Id.* at 434.
[66] *Id.*
[67] TEX. LOC. GOV'T CODE § 271.156.
[68] *City of Georgetown v. Lower Colo. River Auth.*, 413 S.W.3d 803, 807 (Tex. App.—Austin, Aug. 23, 2013, pet dism'd); *see also Wasson Interests, Ltd. v. City of Jacksonville*, 559 S.W.3d 142, 146 (Tex. 2018) (citing *Gates v. City of Dallas*, 704 S.W.2d 737, 739 (Tex. 1986)).

performing a governmental function.[69]  Citing *Wentworth Village* and section 101.0215 of the Texas Tort Claims Act ("*Act*"), the City maintains that several of the buildings and spaces where lighting was retrofitted are listed in the Act as governmental in nature, not proprietary.[70]  Operation of any one of the listed government functions, the City continues, is itself a governmental function and retrofitting the lights was related to the operation and maintenance of the City's spaces.[71]  Thus, it concludes, it was performing a governmental function and is entitled to immunity because it did not waive that immunity.[72]

Plaintiffs, citing *Wasson Interests, Ltd. v. City of Jacksonville* ("*Wasson II*"), respond that the City of Hidalgo was performing a proprietary function when it entered the Contract.  This, Plaintiffs maintain, is because replacing the prior lighting system with an LED lighting system was not an essential government function; rather, it merely touches upon a government function, which is insufficient to implicate governmental immunity.[73]

Distinguishing whether a city is acting in a governmental or proprietary fashion is a difficult task.[74]  The Texas Tort Claims Act aids in determining governmental versus proprietary functions of municipalities in breach of contract cases, such as here.[75]  In *Wasson II*, the Texas Supreme Court considered "both the statutory provisions and the common law in determining whether a city's contractual conduct is governmental or proprietary," focusing solely on the nature of the contract and not the nature of the breach.[76]  The court first determined whether the contracted for conduct was covered under section 101.0215 of the Act and because it was not,

---

[69] ECF No. 63 at 5–7.
[70] *Id.* at 5.
[71] *Id.* at 6–7.
[72] ECF No. 59 at 8.
[73] ECF No. 69 at 6 (citing *Wasson Interests, Ltd.*, 559 S.W.3d at 153).
[74] *Wasson Interests, Ltd.*, 559 S.W.3d at 147 (citing *City of Houston v. Shilling*, 240 S.W.2d 1010, 1012 (Tex. 1951)).
[75] *Id.* at 147–48.
[76] *Id.* at 148–49.

the court looked to the general definitions of governmental and proprietary functions in that section.[77]  The *Wasson II* court ultimately held that because the city's act was proprietary in nature and not "essential" to the operation and maintenance of one of the listed governmental functions in the Act, the city was not entitled to governmental immunity.[78]

For this Court, the punchline in *Wasson II* is the acknowledgment that the operation and maintenance of the facilities listed in section 101.0215 of the Act are governmental acts.[79]  The plain language of the statute dictates that "maintenance" and "operation" are governmental functions in some instances and not in others;  some items on the list specifically mention "maintenance" or "operation" while others do not.  For example, items in sections 101.0215(a)(4), (5), (7), (15), (24), and (31) expressly list "maintenance" or "care" as a governmental function for the corresponding facility (e.g., "bridge construction and maintenance and street maintenance"; "cemeteries and cemetery care"; "establishment and maintenance of jails") and subsection (a)(18) expressly lists "operation" (e.g. "operation of emergency ambulance service").  The other 29 governmental functions listed make no mention of "maintenance," "care," or "operation."[80]

Complicating matters more is that "the operation and maintenance of a public utility" is expressly listed as a proprietary function.[81]  Based on the plain language of the statute then,[82] in some instances operation and maintenance of facilities is a governmental function and in others, it is a proprietary one.  This is particularly true where section 101.0215(a) provides a non-

---

[77] *Id.* at 150.

[78] *Id.* at 153.

[79] *See id.* at 153 ("[T]he City's leasing of the lakefront property was not 'essential' to the City's operation or maintenance of the lake."); *see also City of Houston v. Downstream Envtl., L.L.C.*, 444 S.W.3d 24, 35 (Tex. App.—Houston [1st Dist.] June 12, 2014, reh'g denied) (finding that operation and maintenance of the city's sewer system was a governmental function).

[80] *See generally* Tex. Civ. Prac. & Rem. Code § 101.0215(a).

[81] *Id.* § 101.0215(b)(1).

[82] *See Tex. Lottery Comm'n v. First State Bank of Dequeen*, 325 S.W.3d 628, 640 (Tex. 2010) (stating the rule that "when a statute's language is clear and unambiguous courts do not resort to the rules of construction or extrinsic aids to construe the language").

exclusive list of governmental functions[83] and only those listed in subsection (a) are never pro-
prietary.[84]   However, because this case requires the application of state law, this Court is bound
to "look to the final decisions of [Texas's] highest court."[85]   Therefore, this Court must follow
*Wasson II* and determine whether the retrofitting of the City's conventional lighting systems and
installation of LED lighting systems in government-owned buildings and spaces constitutes op-
eration and maintenance of any of the facilities listed in section 101.0215(a) of the Act.

   First, unlike the situation in *Wasson II*, this Court finds that the contract at issue in this
case involved several places on the Act's list including parks,[86] parking facilities,[87] libraries,[88]
convention centers or coliseums,[89] and streets.[90]   The parties contracted for the LED lighting sys-
tems to be installed in McAllen Park, the City's ballpark, the State Farm Arena and its parking
lot, the City's library, and on 10th Street, amongst other city-owned spaces.[91]   Because the Act
governs tort claims and not breach of contract claims specifically, this Court must also apply the
common law developed by the Texas Supreme Court based on the general definitions of "propri-
etary" and "governmental" found in section 101.0215(a) and (b) of the Act.[92]

---

[83] *See* TEX. CIV. PRAC. & REM. CODE § 101.0215(a) ("A municipality is liable under this chapter for damages arising
from its governmental functions . . . including but not limited to: . . . .").

[84] *Id.* § 101.0215(c) ("The proprietary functions of a municipality do not include those governmental activities listed
under Subsection (a).").

[85] *Chaney v. Dreyfus Serv. Corp.*, 595 F.3d 219, 229 (5th Cir. 2010) (citing *Six Flags, Inc. v. Westchester Surplus
Lines Ins. Co.*, 565 F.3d 948, 954 (5th Cir. 2009)).

[86] TEX. CIV. PRAC. & REM. CODE § 101.0215(a)(13).

[87] *Id.* § 101.0215(a)(25).

[88] *Id.* § 101.0215(a)(15).

[89] *Id.* § 101.0215(a)(16).

[90] *Id.* § 101.0215(a)(3)–(4).

[91] ECF No. 63, Ex. A.

[92] *See, e.g.*, *Wasson Interests, Ltd.*, 559 S.W.3d at 147–48 ("Although these statutory definitions and designations
apply expressly to tort claims, we explained in *Wasson I* that they can also 'aid our inquiry' when applying the di-
chotomy in the contract-claims context. We thus consider both the statutory provisions and the common law in de-
termining whether a city's contractual conduct is governmental or proprietary."); *Hays St. Bridge Restoration Grp.
v. City of San Antonio*, 570 S.W.3d 697, 704–05 (Tex. 2019) ("The first question is whether the lists of governmen-
tal and proprietary functions in Section 101.0215 of the Tort Claims Act include the kind of contract at issue. Next,
'we . . . apply the general definitions' in the Act."); *Tri-Stem, Ltd. v. City of Houston*, 566 S.W.3d 789, 796–97 (Tex.
App.—Houston [14th Dis.] Nov. 29, 2018, pet denied) (analyzing the four factors from *Wasson II* to determine
whether a city's auditing and billing collection contract was governmental or proprietary in nature); *City of Helotes*

The Texas Tort Claims Act defines governmental functions as "those functions that are enjoined on a municipality by law and are given it by the state as part of the state's sovereignty, to be exercised by the municipality in the interest of the general public."[93]  It defines proprietary functions as "those functions that a municipality may, in its discretion, perform in the interest of the inhabitants of the municipality."[94]  From those definitions, the *Wasson II* court devised four factors to be considered when deciding whether a city was acting in a governmental or proprietary capacity: (1) whether entering into the contract was mandatory or discretionary; (2) whether the contract was intended to benefit the general public or the city's residents; (3) whether the city was acting on its own behalf or on behalf of the state; and (4) whether entering into the contract was "sufficiently related to a governmental function to render the act governmental even if it would otherwise have been proprietary."[95]  Lastly, the court instructed that when some factors point to a governmental function and others to a proprietary one, "courts should consider immunity's nature and purpose and the derivative nature of a city's access to that protection."[96]

Applying the governmental/proprietary dichotomy in this case is not a cut-and-dried task.[97]  The contract and the parties' filings demonstrate that the City entered into the contract because it desired to save city funds on energy costs.[98]  There is no evidence in the record that updating the lighting system was mandatory.  Therefore, this Court finds that the first factor weighs in favor of the City acting in a proprietary fashion in entering into the contract with Promlite.

---

*v. Page*, 2019 Tex. App. LEXIS 10945, at *6 (Tex. App.—San Antonio Dec. 18, 2019, pet denied) (analyzing the four factors laid out in *Wasson II* to determine whether a vendor's fair was governmental or proprietary in nature).
[93] TEX. CIV. PRAC. & REM. CODE § 101.0215(a).
[94] *Id.* § 101.0215(b).
[95] 559 S.W.3d at 150.
[96] *Id.* at 154; *see also Hays St. Bridge Restoration Grp. v. City of San Antonio*, 570 S.W.3d 697, 704–05 (Tex. 2019) (discussing its opinion in *Wasson Interests, Ltd.* and applying it to the case in front of it).
[97] *Id.* at 147.
[98] ECF No. 59 at 2; ECF No. 61 at 9, Ex. A at 1.

For the second factor, this Court employs the "benefits test."[99]  If the contract between the City and Promlite primarily benefits its own inhabitants, then this factor weighs in favor of entering into the contract being a proprietary function.[100]  If, on the other hand, the contract primarily benefits the general public, then this factor weighs in favor of the City performing a governmental function.[101]  Here, the State Farm Arena, it's parking lot, the City streets, the parks, and the library are all spaces open to the public, and particularly true regarding the State Farm Arena, frequently used by members of the public outside of the city's residents.[102]  Conversely, the City's intent in updating its lighting systems was to save money on energy costs, which would benefit the City's inhabitants and not the public at large.[103]  The Court finds this factor to be a tossup and thus neutral.  Both the City's inhabitants and the public at large benefit from the City's contract; identifying which party *primarily* benefits is too close to call.

The third factor presents difficulties as well.  In *Wasson II*, the court concluded from the first two factors and because there were "no facts to counter" its conclusion, that the city acted on its own behalf and not on behalf of the state.[104]  Here, as already decided, the City acted discretionarily in entering the contract, but the contract does not primarily benefit the City's inhabitants over the public and vice versa.  Evidence controverting a finding that the City was acting on its own behalf lies in the necessity of lighting for the operation of the facilities listed in section 101.0215 of the Act.  The operation and maintenance, according to *Wasson II*, of the facili-

---

[99] *See Wasson Interests, Ltd.*, 559 S.W.3d at 151.

[100] *Id.*

[101] *Id.*

[102] *Compare Hays St. Bridge Restoration Grp.*, 570 S.W.3d at 706 (finding that bridge restoration was for the general public because it was being restored "for the enjoyment and education of San Antonio residents and visitors"), *with Page*, 2019 Tex. App. LEXIS 10945, at *7–8 (finding that the vendor's market was primarily for the benefit of the city's local businesses and a way to raise funds for the city's budget and therefore was proprietary) *and Tri-Stem, Ltd.*, 566 S.W.3d at 798 (finding that because the refunds collected from the overcharges by the energy company would go directly to the city, the funds would primarily benefit the residents and not the public).

[103] See footnote 102.

[104] *Wasson Interests, Ltd.*, 559 S.W.3d at 152.

ties on the list are governmental functions[105] and lighting falls thereunder. Thus, the third factor, although a close call, weighs in favor of finding that the City was performing a governmental function by entering into the contract.

Lastly, the fourth factor, which considers whether the City's act was sufficiently related to a governmental function to render it governmental too even though it would be proprietary otherwise, also weighs in favor of a governmental function finding. To render such a finding, this Court considered whether the City's act was essential to its governmental actions.[106] In *Wasson II*, the court found that the city's conduct was not essential to the operation and mainte-nance of a government-owned facility listed in the Act.[107] Such is not true here. The instant case is more akin to *Triple BB, LLC*, where the court found the municipality's upgrading of the capa-bilities of its water treatment plant to be a governmental function because it was essential to the municipality's provision of water and sewer service.[108] Lighting is essential to the operation of numerous facilities listed in the Act and included in the contract. Those facilities cannot operate without lights. The City's motivation in upgrading its lighting system does not change the fact that lighting is an essential component of operating these facilities. Therefore, this factor weighs in favor of finding that the City of Hidalgo was acting in a governmental fashion when it con-tracted with Promlite.

Because several of the contracted for spaces are listed in section 101.0215(a) of the Act and two of the four *Wasson II* factors weigh in favor of classifying the City's actions as govern-mental, with one factor weighing against and one factor being neutral, this Court finds that the City of Hidalgo was acting in its governmental capacity in contracting with Promlite. Therefore,

---

[105] *Id.* at 153.
[106] *Id.*
[107] *Id.*
[108] *Triple BB, LLC v. Vill. of Briarcliff*, 566 S.W.3d 385, 393–94 (Tex. App.—Austin Dec. 21, 2018, pet. denied).

the City is entitled to governmental immunity and by operation of section 271.156 of the Texas Local Government Code, that immunity is not waived in federal court.[109]  Dismissal is warranted for lack of subject matter jurisdiction.[110]

## IV.  CONCLUSION

For the reasons above, this Court grants the City of Hidalgo's Motion to Dismiss pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction.[111]  The City of Hidalgo's  Motion to Dismiss pursuant to Rule 12(b)(4), Rule 12(b)(6), and the Texas Constitution is moot.[112]  Promlite and American First National Bank's claims for breach of contract, unjust enrichment, and quantum meruit are dismissed.[113]  The Court will enter an order simultaneously herewith.

SIGNED 12/09/2020.

_____
Eduardo V. Rodriguez
United States Bankruptcy Judge

---

[109] *See, e.g.*, *Smith*, 229 F. Supp. at 576, 582 (dismissing breach of contract claim based on finding that school district was entitled to governmental immunity and section 271.156 of the Texas Local Government Code "explicitly exempts suits in federal court from [limited] waiver found in section 271.152"); *Nationwide Pub. Ins. Adjusters Inc. v. Edcouch-Elsa I.S.D.*, 913 F. Supp. 2d 305, 310–12 (S.D. Tex. Dec. 20, 2012) (dismissing breach of contract claim based on finding that school district was acting in its governmental capacity and plaintiff had not shown that the school district waived that immunity, particularly because immunity could not be waived in federal court pursuant to Texas Local Government Code section 271.156); *Olford v. City of Houston*, 2018 U.S. Dist. LEXIS 108965, at *18 (S.D. Tex. June 29, 2018) (dismissing breach of contract claim based on finding that "[t]he Texas Local Government Code makes it clear that immunity is not waived for breach of contract claims in federal court"); *Scherff v. S. Tex. Coll.*, 2017 U.S. Dist. LEXIS 141458, at *25, *56 (S.D. Tex. Aug. 31, 2017) (dismissing breach of contract claim based on finding that plaintiff did not show that a statutory waiver of immunity applied to the college, but stating that "even if [plaintiff] had, the [c]ourt independently notes that the waiver set forth by § 271.152 'does not waive sovereign immunity in suit in federal court'") (citing TEX. LOCAL GOV'T CODE § 271.156); *Alamo Forensic Servs., LLC v. Bexar Cty.*, 2020 U.S. Dist. LEXIS 88317, at *7 (W.D. Tex. May 19, 2020) (dismissing breach of contract and quantum meruit claim based on a finding that governmental immunity cannot be waived in federal court under Texas Local Government Code section 271.156).

[110] FED. R. CIV. P. 12(h)(3).

[111] ECF No. 59.

[112] *Id.*

[113] ECF No. 9-8.