United States Bankruptcy Court
Southern District of Texas

**ENTERED**

January 11, 2022

Nathan Ochsner, Clerk

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | **CASE NO: 18-36893** |
| **USA PROMLITE TECHNOLOGY INC,** | § | |
| | § | **CHAPTER 7** |
| Debtor. | § | |
| | § | |
| **USA PROMLITE TECHNOLOGY, INC.,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | **ADVERSARY NO. 19-3331** |
| | § | |
| **AMERICAN FIRST NATIONAL BANK** | § | |
| and | § | |
| **CITY OF HILDALGO** | § | |
| and | § | |
| **TEXAS ENVIRO-LITE,** | § | |
| | § | |
| Defendants. | § | |

## <u>MEMORANDUM OPINION</u>

On remand from the United States District Court, and in light of subsequent intervening case law, this Court must decide whether the City of Hidalgo waived its immunity to suit. Additionally, the Court will consider the previously unaddressed issue of whether dismissal should be granted on the grounds that the November 20, 2013 Energy Management Contract is unenforceable and unconstitutional under Article XI sections 5 and 7 of the Texas Constitution. For the reasons stated herein, the Court denies the City of Hidalgo's motion to dismiss on both grounds.

# I. BACKGROUND

The City of Hidalgo ("*Defendant*") is a home-rule municipality in the Rio Grande Valley.[1] In 2013, Defendant entered into a contract with U.S.A. Promlite Technology, Inc. ("*Promlite*") for the retrofitting and installation of LED lights in all city buildings, streets lamps, parking lots, and the State Farm Arena (now known as the Payne Arena) and other government-owned spaces.[2] Disputes over the contract arose and Promlite sued Defendant in the Hidalgo County State District Court for breach of contract and asserted quasi-contractual equitable claims for unjust enrichment and quantum meruit.[3]

American First National Bank ("*AFNB*" and together with Promlite, "*Plaintiffs*") filed a Petition in Intervention claiming that it received an assignment from Promlite as to the breach of contract claim against the City.[4] This was purportedly part of the loan agreement between AFNB and Promlite.[5] The State District Court granted summary judgment against AFNB's intervention claim.[6] Subsequently, Promlite filed for bankruptcy on December 6, 2018.[7] Promlite then filed a Notice of Removal of the state court action against Defendant[8] and later, AFNB filed a Motion for Reconsideration of the State Court's Order Granting Summary Judgment.[9] After a hearing, this Court reconsidered  the state court summary judgment order and allowed AFNB to proceed under a "partial assignment."[10]

---

[1] ECF No. 95 at 2, ¶ 3.  Pursuant to Texas Local Government Code § 5.004, "[a] municipality is a home-rule munici-pality if it operates under a municipal charter that has been adopted or amended as authorized by Article XI, Section 5, of the Texas Constitution."
[2] *Id.* at 3-4, ¶ 9-16; ECF No. 95-3.
[3] ECF No. 9-8.
[4] ECF No. 59 at 3, ¶ 3.
[5] *Id.*
[6] ECF No. 11-12.
[7] Case No. 18-36893.
[8] ECF No. 1.
[9] ECF No. 14.
[10] ECF No. 37.

In its Original Complaint ("*Complaint*"), Promlite pled the following causes of action: (i) breach of contract; (ii) unjust enrichment; and (iii) quantum meruit.[11]   Seeking dismissal of all three claims, Defendant filed its Plea to the Jurisdiction, Motion to Dismiss for Lack of Subject Matter Jurisdiction, Motion to Dismiss Pursuant to Rule 12(b) and Dismiss Pursuant to the City of Hidalgo's Governmental Immunity ("*Motion to Dismiss*" or "*Motion*").[12]   In response, Promlite and AFNB filed their Joint Response to Defendant's Motion to Dismiss ("*Joint Response*").[13]   A hearing on the Motion to Dismiss was held on November 16, 2020.[14]   On December 9, 2020, this Court entered its Memorandum Opinion and Order granting Defendant's Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(1) on the grounds that suit against Defendant was barred by governmental immunity.[15]

On December 17, 2020, Plaintiffs filed a joint appeal to the United States District Court.[16]   On July 29, 2021, the District Court issued its Memorandum Opinion and held that while Promlite and AFNB's appeal of this Court's Order and Memorandum Opinion at ECF Nos. 77 and 78 was pending, the Fifth Circuit concluded that Texas Local Government Code § 271.156 does not bar suits against a municipality in federal courts, because such an entity "cannot condition its waiver of immunity on a suit being brought in any forum other than a federal forum."[17]   The Fifth Circuit stated that, "in the absence of constitutional sovereign immunity, a governmental entity cannot bar a federal court from exercising jurisdiction over claims that state courts would recognize and

---

[11] ECF No. 9–8.
[12] ECF No. 59.
[13] ECF No. 61.
[14] ECF Nos. 74–75.
[15] ECF No. 77.
[16] ECF No. 80.
[17] *Tercero v. Texas Southmost Coll. Dist.*, 989 F.3d 291, 298 (5th Cir. 2021).

enforce," and that "[f]ederal jurisdiction cannot be defeated by a state statute limiting the forum in which the action must be brought."[18]

On August 17, 2021, the Court held a status conference and ordered briefing.[19]  On August 30, 2021, Plaintiffs filed an amended complaint ("*Amended Complaint*")[20] where the only remaining cause of action is a breach of contract claim alleged against Defendant.  Plaintiffs also filed a joint brief addressing remaining issues on September 14, 2021 ("*Plaintiffs' Brief*").[21]  On September 28, 2021, Defendant filed its brief ("*Defendant's Brief*"),[22]  and pursuant to the Court's October 27, 2021 Order,[23] Plaintiffs filed their brief in reply to Defendant's Brief ("*Plaintiffs' Reply Brief*") on November 11, 2021 addressing new issues raised in Defendant's Brief.  On December 20, 2021, a hearing was held addressing the remaining issues.[24]  The matter is now ripe for determination.

## II. ANALYSIS

### A. Jurisdiction to Consider the City of Hidalgo's Motion to Dismiss

#### 1. Arising In and Arising Under Jurisdiction

This Court lacks both arising in and arising under jurisdiction because  Plaintiffs' remaining cause of action for breach of contract is neither created or determined by title 11 nor does it arise *only* in bankruptcy.[25]  Under 28 U.S.C. § 157(a), "[b]ankruptcy judges may hear and determine all cases under title 11 and all core proceedings *arising under* title 11, or *arising in* a case under title 11 . . . ."[26]  For jurisdiction to "arise under" title 11, the cause of action asserted by the

---

[18] *Id*. at 297 (quotation marks omitted).
[19] ECF No. 93.
[20] ECF No. 95.
[21] ECF No. 96.
[22] ECF No. 97.
[23] ECF No. 98.
[24] ECF No. 104.
[25] *Wood v. Wood (In re Wood)*, 825 F.2d 90, 96 (5th Cir. 1987) (alteration in original).
[26] Emphasis added.

plaintiff must be either created or determined by title 11.[27]  "Arising under" jurisdiction requires that the proceeding "invoke a substantive right provided by [the Bankruptcy Code]."[28]  "Arising in" jurisdiction requires that the proceeding "would have no existence outside of the bankruptcy," where the asserted causes of action are not based on any provision of the Bankruptcy Code.[29]

Plaintiffs' remaining cause of action in this case does not arise under or arise in title 11.[30] Plaintiffs' claim for breach of contract was initiated in state court[31] and arises under the Texas Business and Commerce Code.[32]  Plaintiffs do not argue that their breach of contract claim is based on substantive rights provided by the Bankruptcy Code and this Court does not find any such rights relevant to this proceeding.  Additionally, this case landed in this Court only because Promlite filed a Notice of Removal based on its underlying bankruptcy case.[33]  If not for Promlite's bankruptcy, the claim asserted could have been adjudicated on the merits in the state court.[34]  Lacking "arising under" or "arising in" jurisdiction, the Court turns to whether it has "related to" jurisdiction pursuant to 28 U.S.C. § 1334(b).

### 2.   Related to Jurisdiction

This Court has related to jurisdiction over this matter pursuant to 28 U.S.C. § 157(c)(1), which provides "[a] bankruptcy judge may hear a proceeding that is not a core proceeding but that

---

[27] *In re Wood*, 825 F.2d at 96.

[28] *EOP-Colonnade of Dallas Ltd. P'ship v. Faulkner (In re Stonebridge Techs., Inc.)*, 430 F.3d 260, 267 (5th Cir. 2005).

[29] *In re Wood*, 825 F.2d at 880.

[30] *See, e.g.*, *Apache Corp. v. Castex Offshore, Inc. (In re Castex Energy Partners, LP)*, 584 B.R. 150, 155, 157 (Bankr. S.D. Tex. Feb. 1, 2018) (finding that plaintiff's breach of contract claim and defendant's counter claims were state law claims not brought under title 11) (citing *In re Petroleum Products & Serv., Inc.*, 556 B.R. 296, 302 (Bankr. S.D. Tex. 2016)).

[31] ECF No. 59, Ex. 4.

[32] *See* ECF No. 14-2; *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 740 (Tex. 2005) (recognizing quantum meruit as an equitable remedy adjudicated in Texas courts); *Fortune Prod. Co. v. Conoco, Inc.*, 52 S.W.3d 671, 683–84) (recognizing unjust enrichment as an equitable remedy adjudicated in Texas courts).

[33] See ECF No. 1 at 2.

[34] *See In re Castex Energy Partners, LP*, 584 B.R. at 155 (finding that because the suit was originally filed in state court and the breach of contract claim and counterclaims asserted were based on state law, the suit could have proceeded to the merits of the claims in state court.).

is otherwise related to a case under title 11." A proceeding is "related to" a case under title 11 "when the outcome of that proceeding could *conceivably* have any effect on the estate being administered in bankruptcy."[35] In other words, "if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate."[36] Here, Promlite is the debtor in the underlying Chapter 7 bankruptcy case.[37] The outcome of this adversary proceeding could conceivably impact the administration of Promlite's bankruptcy case because if it prevails in the instant suit and is awarded any of the damages it seeks,[38] that money will become property of the estate pursuant to 11 U.S.C. § 541(a) and be subject to the $1,817,377.73 in liabilities Promlite disclosed on its latest schedules.[39] Any money potentially won in a lawsuit such as this one conceivably would have an effect on administration of the bankruptcy estate.[40]

### B. Authority to Enter a Final Order

Defendant's Motion to Dismiss requests that this Court dismiss Plaintiffs' cause of action pursuant to, inter alia, Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Federal Rule 12 applies to this adversary proceeding pursuant to Federal Rule of Bankruptcy Procedure 7012. Rule 12(h)(3) mandates that "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."[41] Because "[i]t is incumbent on all federal courts to

---

[35] *Walker v. Cadle Co. (In re Walker)*, 51 F.3d 562, 569 (5th Cir. 1995) (alteration in original) (citations omitted).
[36] *Id.* (citing *In re Majestic Energy Corp.*, 835 F.2d 87, 90 (5th Cir. 1988)); *see also, e.g.*, *Edge Petroleum Operating Co. v. GPR Holdings, L.L.C. (In re TXNB Internal Case)*, 483 F.3d 292, 298 (5th Cir. 2007); *Celotex Corp. v. Edwards*, 514 U.S. 300, 308 (1995) (holding that "the 'related to' language of § 1334(b) must be read to give district courts (and bankruptcy courts under § 157(a)) jurisdiction over more than simply proceedings involving the property of the debtor or the estate.").
[37] Case No. 18-36893.
[38] Case No. 19-3331, ECF No. 95.
[39] Case No. 18-36893, ECF No. 48 at 16. In its schedules, Promlite discloses that its only assets are $1,000 in cash, this cause of action, and a cause of action for an unknown amount against Edinburg Consolidated Independent School District.
[40] *See Beitel v. OCA, Inc. (In re OCA, Inc.)*, 551 F.3d 359, 367 (5th Cir. 2008) (finding that the adversary proceeding could have an effect on the bankruptcy estate because a judgment against the defendant would increase the estate).
[41] FED. R. CIV. P. 12(h)(3); FED. R. BANKR. P.7012.

dismiss an action whenever it appears that subject matter jurisdiction is lacking," this Court must

enter an order dismissing this suit if it finds its lacks jurisdiction to adjudicate Plaintiffs' remaining

claim.[42]   However, should the Honorable United States District Court find that the Bankruptcy

Court did not have authority to enter a final order, this Court requests that the District Court convert

this Memorandum Opinion into a Report and Recommendation.

### C.  Defendant's Motion to Dismiss

The Court considers two narrow issues: (1) whether Defendant waived its immunity to suit;

and (2) whether dismissal should be granted on the grounds that the November 20, 2013 Energy

Management Contract ("*Contract*") is unenforceable and unconstitutional under the Texas Con-

stitution Article XI sections 5 and 7.   First, in its Motion, Defendant argues that it is entitled to

governmental immunity and that immunity has not been waived.[43]   Thus, Defendant concludes,

this Court must dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure

12(b)(1).[44]   Next, Defendant argues that if this Court does not dismiss the Amended Complaint

pursuant to Rule 12(b)(1) on the basis of governmental immunity, then the Court should dismiss

the Amended Complaint pursuant to Rule 12(b)(6) on the same basis because governmental im-

munity prohibits Plaintiffs from asserting a claim upon which relief can be granted.[45]   Finally,

Defendant contends that the Amended Complaint should be dismissed because the Contract, made

the basis of Plaintiffs' Amended Complaint, is void, unconstitutional, and unenforceable because

it creates a debt without establishment of a sinking fund, as required by the Texas Constitution.[46]

That, Defendant concludes, requires dismissal as a matter of law.[47]

---

[42] *Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998); *see also Smith v. Houston Indep. Sch. Dist.*, 229 F. Supp. 3d 571, 575 (S.D. Tex. 2017).
[43] *Id.* at 8–11.
[44] *Id.* at 6–7.
[45] *Id.* at 11–12.
[46] *Id.* at 13–14.
[47] *Id.* at 14.

### D.  Standard of Review for Federal Rule of Civil Procedure 12(b)(1)

Under Federal Rule of Civil Procedure 12(b)(1),[48] this Court must dismiss the Amended Complaint if it finds that it lacks subject matter jurisdiction to hear the dispute.[49]  "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case."[50]  Here, Defendant alleges that this Court is without subject matter jurisdiction to consider the instant cause of action because Defendant has not waived its governmental immunity.[51]  A defendant's correct assertion of governmental immunity is reason to grant a motion to dismiss under Rule 12(b)(1) because the court lacks subject matter jurisdiction to adjudicate the dispute.[52]  In deciding a motion to dismiss under Rule 12(b)(1), a court may consider matters outside the pleadings.[53]  "Ultimately, a motion to dismiss for lack of subject matter jurisdiction should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief."[54]  In the case at bar, the Court's jurisdiction over Plaintiffs' remaining claim against Defendant is indisputable *unless* Defendant is in fact entitled to claim sovereign immunity and has not waived this right.  If the claim of immunity is valid, then dismissal must be granted.[55]

---

[48] FED. R. BANKR. P. 7012(b) (providing that Federal Rule of Civil Procedure 12 applies in adversary proceedings).

[49] The Court notes that it has the jurisdiction to determine whether it has subject matter jurisdiction over the dispute at bar.  *See Henry v. United States*, 277 Fed. App'x. 429, 434 n.11 (5th Cir. 2008) ("A court always has jurisdiction to consider its jurisdiction . . . .") (citing *Chicot County Drainage Dist. v. Baxter State Bank*, 308 U.S. 371, 376 (1940) (holding that a federal court has authority to determine whether it has subject matter jurisdiction over a dispute)); *Trevino v. Michelin N. Am., Inc.*, 2006 WL 778609, at *8 (S.D. Tex. Mar. 23, 2006) ("The court has the authority to pass upon its own jurisdiction . . . .") (quoting *Chicot County Drainage Dist.*, 308 U.S. at 376).

[50] *Champions Truck & Equip. Inc. v. Patterson*, 2008 WL 2810608, at *1–2 (S.D. Tex. July 21, 2008) (quoting *Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998)).

[51] ECF No. 59 at 5–6.

[52] *See Springboards to Educ., Inc. v. Houston Indep. Sch. Dist.*, 2017 U.S. Dist. LEXIS 221322, at *5–6 (S.D. Tex. Sept. 20, 2017) (granting the school district's Rule 12(b)(1) motion to dismiss because it was entitled to governmental immunity).

[53] *See Montez v. Dep't of Navy*, 392 F.3d 147, 149 (5th Cir.2004)

[54] *Ramming*, 281 F.3d at 161.

[55] *See* TEX. LOC. GOV'T CODE § 271.156 ("This subchapter does not waive sovereign immunity to suit in federal court."); *see also* FED. R. CIV. P. 12(h)(3).

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) is characterized as either facial or factual.[56] A "facial attack" is based solely on the pleadings and requires the court to assess whether the plaintiff has alleged a sufficient basis for subject matter jurisdiction.[57] Similar to a Rule 12(b)(6) motion, when ruling on a facial attack, the court must presume that the factual allegations in the complaint are true and determine whether they establish subject matter jurisdiction.[58] When discussing exhibits on a facial attack, the Court may consider exhibits attached to the complaint as well as those attached to a motion to dismiss.[59]

On the other hand, a Rule 12(b)(1) motion makes a factual attack at jurisdiction when the movant provides supporting evidence that contradicts the jurisdictional allegations in the complaint.[60] Further, in resolving a factual attack, the court may consider extrinsic evidence such as testimony and affidavits.[61] The trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case without presuming the truthfulness of the plaintiff's allegations.[62]

In the case at bar, Defendant's Rule 12(b)(1) motion is a "facial" attack because the motion attacks jurisdiction on the pleadings alone, and not by resorting to supporting evidence. While it is true that Defendant has filed certain exhibits along with its motion to dismiss, its argument does not relate to a factual dispute. Rather, as discussed *supra*, Defendant's Motion raises a question of law – specifically whether a valid contract existed sufficient to waive Defendant's immunity. Accordingly, when examining Defendant's argument, Plaintiffs' allegations in the Amended

---

[56] *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980); *In re Haymond*, No. 21-32307, 2021 Bankr. LEXIS 2651, at *8 (Bankr. S.D. Tex. 2021).

[57] *In re Haymond*, No. 21-32307, 2021 Bankr. LEXIS 2651, at *8.

[58] *Williamson v. Tucker*, 645 F.2d 404, 412 (5th Cir. 1981); *Gaylor v. Inland Am. McKinney Towne Crossing LP*, LLC, No. 4:13-cv-307, 2014 U.S. Dist. LEXIS 65705, at *4-5 (E.D. Tex. 2014).

[59] *Lawrence v. United States*, 597 Fed. Appx. 599, 602 (11th Cir. 2015).

[60] *Cell Sci. Sys. Corp. v. La. Health Serv.*, 804 F. App'x 260, 263 (5th Cir. 2020).

[61] *Id.*

[62] *Williamson*, 645 F.2d at 412-13.

Complaint will be presumed as true.[63]  Regardless of the nature of the attack, "[t]he plaintiff constantly bears the burden of proof that jurisdiction does in fact exist."[64]

### 1. Whether governmental immunity requires this Amended Complaint to be dismissed

When an arm of government or its officers are sued, a court must consider whether that entity is entitled to immunity, thereby compelling dismissal of the suit.  There are two related, but distinct types of immunity: sovereign immunity and governmental immunity.[65]  Sovereign immunity applies to the states and its various entities while governmental immunity protects local units of government, such as cities, when they perform governmental functions.[66]

The Eleventh Amendment of the United States Constitution strips federal courts of jurisdiction over suits against states, unless a state waives immunity.[67]  Eleventh Amendment immunity applies only to states and their agencies, not to units of local government, such as cities.[68]  As noted in this Court's previous decision, employing the Eleventh Amendment in this case would be erroneous because Plaintiffs sued Defendant, not the state of Texas.  Thus, state law determines whether Defendant enjoys immunity from suit in federal court for the cause of action asserted by Plaintiffs.

Under Texas law, "a city is not a freestanding sovereign with its own inherent immunity."[69]

---

[63] *See Benavidez v. Burlington N. Santa Fe Corp.*, No. CIV.A. G-07-00105, 2007 WL 2363282, at *1 (S.D. Tex. Aug. 15, 2007).

[64] *Benavidez v. Burlington N. Santa Fe Corp.*, No. CIV.A. G-07-00105, 2007 WL 2363282, at *1 (S.D. Tex. Aug. 15, 2007) (quoting *Rodriguez*, 992 F.Supp., at 879).

[65] *City of Westworth Vill. v. City of White Settlement*, 558 S.W.3d 232, 240 (Tex. App.—Fort Worth Aug. 9, 2018, pet. denied) (citing *Travis Cent. Appraisal Dist. v. Norman*, 342 S.W.3d 54, 57–58 (Tex. 2011)).

[66] *Id.* (citing *Travis Cent. Appraisal Dist.*, 342 S.W.3d at 57–58).

[67] *Sissom v. Univ. of Tex. High Sch.*, 927 F.3d 343, 347 (5th Cir. 2019).

[68] *Id.*; *see also Board of Trustees v. Garrett*, 531 U.S. 356, 369 (2001) (finding that while local governments are "'state actors' for the purposes of the Fourteenth Amendment," the immunity found in the Eleventh Amendment does not extend "to units of local government.").

[69] *Wasson Interests, Ltd. v. City of Jacksonville*, 489 S.W.3d 427, 433 (Tex. 2016); *see also Reynolds v. Sims*, 377 U.S. 533, 575 (1964) ("Political subdivisions of States—counties, cites, or whatever—never were and never have been considered as sovereign entities.").

When, and only if, a city is "acting as the State's agent and performing governmental functions for the public benefit," does it enjoy immunity.[70]  A state's immunity does not trickle down to a city performing proprietary functions because those "are not performed under the authority, or for the benefit, of the sovereign."[71]  And the Texas Supreme Court has held that the governmental-proprietary dichotomy applies to contract claims.[72]  This Court previously found that Defendant was acting in a governmental capacity contracting with Promlite.[73]  On appeal, the District Court affirmed this decision.[74]

Even when acting in a in a governmental capacity, however, the Texas legislature has abrogated governmental immunity in certain situations.[75]  Texas Local Government Code section 271.152 states: "A local governmental entity that is authorized by statute or the constitution to enter into a contract and that enters into a contract subject to this subchapter waives sovereign immunity to suit for the purpose of adjudicating a claim for breach of the contract . . . ."[76]  Notably, section 271.156 says that the "subchapter does not waive immunity to suit in federal court."[77]  Until recently, case law had interpreted section 271.156 to bar waiver of governmental immunity in federal court.[78]  In *Tercero*, the Fifth Circuit clarified that section 271.156 does not bar suits against a municipality in federal court, because such an entity "cannot condition its waiver of immunity on a suit being brought in any forum other than a federal forum."[79]  The Fifth Circuit

---

[70] *Id.* (citing *City of Galveston v. State*, 217 S.W.3d 466, 478 (Tex. 2007) (Willett, J., dissenting)).

[71] *Id.* at 434.

[72] *Id.*

[73] ECF No. 76.

[74] ECF No. 87.

[75] *Tercero v. Tex. Southmost Coll. Dist.*, 989 F.3d 291, 297 (5th Cir. 2021).

[76] Tex. Loc. Gov't Code § 271.152.

[77] Tex. Loc. Gov't Code § 271.156.

[78] *See, e.g.*, *Smith v. Hous. Indep. Sch. Dist.*, 229 F. Supp. 3d 571, 576, 582 (S.D. Tex. 2017); *Nationwide Pub. Ins. Adjusters Inc. v. Edcouch-Elsa I.S.D.*, 913 F. Supp. 2d 305, 310-12 (S.D. Tex. Dec. 20, 2012).

[79] *USA Promlite Tech., Inc. v. City of Hidalgo*, Civil Action No. H-20-4297, 2021 U.S. Dist. LEXIS 140596, at *11 (S.D. Tex. 2021) (quoting *Tercero*, 989 F.3d 291 at 298).

reasoned that, "in the absence of constitutional sovereign immunity, a governmental entity cannot bar a federal court from exercising jurisdiction over claims that state courts would recognize and enforce," and that "[f]ederal jurisdiction cannot be defeated by a state statute limiting the forum in which the action must be brought."[80]   As such, this Court must now consider whether Defendant waived immunity to this suit.

The analysis of whether waiver of immunity applies must necessarily focus on the contractual language and relationship of the parties,[81] and three requirements must be established: (1) the party against whom the waiver is asserted must be a local governmental entity; (2) the entity must be authorized by statute or the Constitution to enter into contracts; and (3) the entity must in fact have entered into a contract that is "subject to this subchapter."[82]   The first two requirements for waiver of immunity are not in dispute in this case.[83]   Plaintiffs have adequately pled that Defendant is a "local government entity"[84] as that term is defined in Chapter 271 of the Texas Local Government Code.[85]   Similarly, the Amended Complaint asserts that Defendant is authorized by its charter to enter into contracts.[86]

Regarding the third element, a "contract subject to [subchapter I]" is defined as "a written contract stating the essential terms of the agreement for providing goods or services to the local governmental entity . . . ."[87]   Five elements must be met to determine if the Contract is "subject to

---

[80] *Tercero*, 989 F.3d 291 at 297.

[81] *Ben Bolt-Palito Blanco Consol. Indep. Sch. Dist. v. Tex. Political Subdivisions Prop./Casualty Joint Self-Insurance Fund*, 212 S.W.3d 320, 327 (Tex. 2006).

[82] *W. Tex. Mun. Power Agency v. Republic Power Partners, L.P.*, 428 S.W.3d 299, 307 (Tex. App.—Amarillo 2014) (citing *City of Houston v. Williams*, 353 S.W.3d 128, 134 (Tex. 2011)).

[83] *See generally* ECF Nos. 59, 97.

[84] ECF No. 95 at 3, ¶ 6.

[85] TEX. LOC. GOV'T CODE § 271.151(3) (defining "local government entity" to mean "a political subdivision of this state, other than a county or unit of state government as that term is defined by Section 2260.001, Government Code").

[86] ECF No. 95 at 3, ¶ 6.

[87] TEX. LOC. GOV'T CODE § 271.152(2)(A).

this subchapter."  It must be (i) in writing; (ii) state the essential terms; (iii) provide for goods or services; (iv) to the local governmental entity; and (v) be executed on behalf of the local governmental entity.[88]  The Court will consider each in turn.

### i.      Whether the Contract was in writing

Defendant argues that it "has not waived its governmental immunity as to AFNB's claim because it never entered into a written contract with AFNB for any goods or services."[89]  The basis of Defendant's contention is that no contractual privity existed between AFNB and Defendant. Since no agreement between AFNB and Defendant existed directly, Defendant asserts there is not a written contract sufficient to satisfy waiver of immunity.[90]  Defendant is misguided, however, because as the Seventh Court of Appeals for Texas has stated, "the assignment of any of the rights, privileges, duties or obligations arising under [an] agreement does not revive that which had already been waived."[91]  Thus, when taking the pleadings as true as this Court must, Defendant satisfied the written contract requirement when City Manager Joe Vera executed the Contract with Promlite on November 20, 2013.[92]  Although Promlite's assignment to AFNB may bear on questions of ultimate liability, this assignment does not impact general immunity as it pertains to Defendant.  As such, the first element of whether the Contract is subject to subchapter I is satisfied.

### ii.      Whether the contract stated the essential terms

Next, Defendant argues that the Contract lacks an essential term because the price to be paid is not sufficiently definite.[93]  According to the pleadings, the Contract provided that Defendant was to pay Promlite a percentage of the energy savings that it received as a result of Promlite's

---

[88] *W. Tex. Mun. Power Agency*, 428 S.W.3d at 307.
[89] ECF No. 97 at 3.
[90] *Id.* at 3–4.
[91] *W. Tex. Mun. Power Agency*, 428 S.W.3d at 308.
[92] ECF No. 95 at 4, ¶ 12; ECF No. 95-2.
[93] ECF No. 97 at 4.

improvements.[94]  Specifically, Promlite would receive 90% of the energy savings over a seven-year period.[95]  Rather than a lump-sum payment at the end of the seven-year period, Defendant agreed to pay Promlite 90% of the monthly estimated savings over the seven-year period each month.[96]  However, under Promlite's energy savings guarantee, Defendant would be able to recover from Promlite the difference between the estimated and actual energy savings in the event that the actual savings did not meet projections.[97]  In other words, whether advanced payments were made or not, the Contract called for Promlite to receive 90% of the actual energy savings Defendant accrued over the seven-year period.

To Defendant, this method of calculation is not sufficient because the number is "speculative" and would be dependent on the calculations of an unnamed independent accounting firm.[98] This Court emphasizes that one of the most elementary contract principles is that the price to be paid is sufficiently definite if it contains amounts or percentages, as long as the percentage calculation is adequately defined.[99]  As detailed in the preceding paragraph, that is certainly the case here.

Next, to the extent that Defendant was attempting to argue that the price to be paid was speculative because it may not have had to pay Promlite at all if energy savings went down, this argument also fails.  The mere fact that the value of the consideration is variable does not make it illusory.  Furthermore, Defendant's assertion that the calculation would be based on an unnamed independent accounting firm is clearly inaccurate.  Upon review of the Contract, attached as an

---

[94] ECF No. 95 at 4, ¶ 15.
[95] *Id.* at 5, ¶ 20.
[96] *Id.*
[97] *Id.* at 5, ¶ 21.
[98] ECF No. 97 at 4.
[99] *Helms v. Swansen*, No. 12-14-00280-CV, 2016 Tex. App. LEXIS 4540, at *10 (Tex. App.—Tyler Apr. 29, 2016) ("Contract terms are reasonably certain when they provide a basis for determining the existence of a breach and for giving an appropriate remedy.").

exhibit to the Amended Complaint, paragraph 4.2 of the Contract calls for the use of the independent accounting firm only if a dispute arose.[100]  Thus, the calculation of payments is adequately defined and Defendant's argument that the Contract lacks an essential term because the price to be paid is not sufficiently definite is meritless.  Therefore, the second element regarding whether the Contract is subject to subchapter I is met.

### iii.    Whether the Contract provides for goods and services

Defendant contends that "Promlite did not enter into a Contract with the City with the expectation that it would be paid for parts, labor, goods, or services" and that Promlite's only invoices were for energy savings.[101]  However, in the Amended Complaint, Plaintiffs pled that, "[u]nder the Contract, Promlite removed all of the City's existing lights and related equipment, provided and installed new replacement LED lights and related equipment" and "had the continuing responsibility during the term of the Contract to replace and install any LED lights as needed."[102]  Notably, Defendant never disputes that Promlite did in fact *provide* parts, labor, goods, or services to Defendant.  Instead, Defendant's argument merely highlights that the basis of payment Promlite would receive in return was calculated by the rate of energy savings.  Promlite did not contract for energy savings.  Promlite contracted for payment at a rate to be determined in accordance with the energy savings.  The method of calculation has no impact on whether services were provided.  Clearly, Plaintiffs adequately pled that Promlite provided goods and services to Defendant and thus the third element regarding whether the Contract is subject to subchapter I is met.

---

[100] ECF No. 95-2 ("Should an irresolvable disagreement arise as to the calculation of energy savings, an independent public accounting firm may be engaged by either party to conduct a review and give an opinion whether the calculation of savings or deficiencies as prepared by ESCO is fairly stated in accordance with this Contract.").
[101] ECF No. 97 at 4.
[102] ECF No. 95 at 4, ¶ 14.

####        iv.        Whether the goods and services were provided to the local government entity

Having determined that the Contract provided for goods and services, Defendant does not dispute that it is a local government entity.[103]   Accordingly, the fourth element regarding whether the Contract is subject to subchapter I is satisfied.

####        v.        Whether the Contract was executed on behalf of the local government entity

Defendant further contends: (1) that the Contract was not properly executed; and (2) that the Contract did not comply with procurement provisions of the Texas Local Government Code.[104] Defendant first asserts that minutes from a City Council meeting from November 6, 2013 show that City Council and Mayoral approval were conditioned upon approval of a study of subdivisions.[105]   To Defendant, failure to include evidence of the subsequent study of subdivisions means that Plaintiffs failed to meet their burden in demonstrating that Defendant approved the Contract. Defendant also points out that this meeting was about a possible agreement with Enviro-Lite Solutions not Promlite.[106]

Plaintiffs respond by citing to *Clear Channel Outdoor, Inc.*, in which the Texas 14th Court of Appeals clarified that "Section 271.152 does not require that the contract at issue be properly executed by the governmental entity; rather, the requirements of the statute are satisfied if the contract was properly executed on behalf of the entity."[107]   Furthermore, in *HV BTW, LP*, the Texas 14th Court of Appeals stated that "whether a contract is binding is a question that goes to the merits of the case, not a question of whether the contract was properly executed."[108]   The Texas Supreme Court has since noted that "executed" requires more than a mere showing that a representative of

---

[103] *See generally* ECF Nos. 59, 97.
[104] ECF No. 97 at 5–6.
[105] *Id.*
[106] *Id.* at 5.
[107] *City of Hous. v. Clear Channel Outdoor, Inc.*, 233 S.W.3d 441, 446 (Tex. App.—Houston [14th Dist.] 2007).
[108] *Hous. Cmty. Coll. Sys. v. HV BTW, LP*, 589 S.W.3d 204, 214 (Tex. App.—Houston [14th Dist.] 2019).

the government entity signed the contract.[109]  Rather, to avail itself of a waiver of immunity, a

party asserting a breach-of-contract claim against a government entity must demonstrate that the

contract's execution comports with the authority the legislature granted the government entity.

Here, Plaintiffs assert that the Contract was executed on November 20, 2013 by City Manager Joe

Vera on behalf of Defendant[110] and verified by Defendant on September 19, 2014.[111]  In support,

Plaintiffs attach a copy of the Contract with a signature from City Manager Joe Vera[112] and a copy

of a document allegedly verifying the Contract signed by Interim City Manager Mike R. Perez.[113]

When taken as true, Plaintiffs have sufficiently asserted that City Manager Joe Vera executed the

Contract.  The question then turns to whether the City Manager was granted authority to execute

contracts on behalf of Defendant.  As to this, Plaintiffs point to Defendant's Charter, article II

sections 1.02 and 2.01, which provides authorization.[114]

Defendant next argues that the Contract was not properly executed because the Contract

did not meet the requirements of Texas Local Government Code section 252.021(a), which man-

dates when executing contracts with an expenditure of more than $50,000 from one or more mu-

nicipal funds, the city must: (1) comply with competitive sealed bidding or competitive sealed

proposals; (2) reverse auction procedure; or (3) comply with certain methods of construction pro-

curement.  To Defendant, Chapter 271's waiver of immunity is conditioned on compliance with

procurement laws. Thus, failure to comply with the provisions would deem the Contract void as

improperly executed and result in Defendant not having waived its immunity.

Plaintiffs respond by arguing that section 252.021(a) is inapplicable because exceptions

---

[109] *See El Paso Educ. Initiative, Inc. v. Amex Props., LLC*, 602 S.W.3d 521, 532 (Tex. 2020) ("It is not enough, then, that an open-enrollment charter school's representative signs a contract.").
[110] ECF No. 95 at 4, ¶ 12.
[111] *Id*. at 6.
[112] ECF No. 95-2 at 34.
[113] ECF No. 96-5.
[114] City of Hidalgo Charter, art. II §§ 1.02, 2.01.

apply under section 252.022.[115]  Specifically, Plaintiffs contend that the Contract spending is excepted as "a procurement necessary to preserve or protect the public health or safety of the municipality's residents" under section 252.022(a)(2) or, alternatively, "a procurement for personal, professional, or planning services" under section 252.022(a)(4).  The Court will take each argument in turn.

In support of its argument that the section 252.022(a)(2) exception applies, Plaintiffs point to this Court's previous decision finding that the Contract was essential to the operation and maintenance of Defendant's facilities because lighting was essential to government operation.[116] Noting that the District Court affirmed this ruling, Plaintiffs assert that if the services provided under the Contract were essential to the operation and maintenance then they must also be "necessary to preserve or protect the public health or safety of the municipality's residents."  Persuasively, Plaintiffs maintain that lights protect public health and safety because they are used to prevent crime and thus to protect the health and safety of Defendant's residents.

Plaintiffs' section 252.022(a)(4) exception argument is also convincing.  Plaintiffs assert that "many of the services called for under the [Contract]—such as to perform an energy usage audit, to identify energy savings measures, to remove Defendant's existing lights and install new replacement LED lighting, and to maintain and repair the LED lighting throughout the term of the Contract—were personal, professional or planning services that are also an exception to the bidding requirements and fall within the 252.022(a)(4) exception."[117]  In support, Plaintiffs cite to *Wight Realty*, which found that both sections 252.022(a)(2) and 252.022(a)(4) were triggered when a developer and the City of Friendswood executed a contract providing that on the City of

---

[115] ECF No. 100 at 1-2.
[116] ECF No. 100 at 2 (citing ECF No. 76 at 16).
[117] *Id.* at 3.

Friendswood's behalf, the developer would construct and develop youth recreational sports facilities on a tract of land owned by the developer and two adjoining tracts to be acquired by the developer.[118]  Similar to the case at hand, in *Wight Realty*, the City of Friendswood contended that the developer's agreement was void because it did not comply with competitive bidding requirements of section 252.021(a).[119]  The Texas Court of Appeals rejected this argument and held that the agreement to construct and sell the recreational facilities and land was a "procurement necessary to preserve or protect the public health or safety of the municipality's residents."[120]  Further, the court held that the competitive bidding requirements did not apply because the agreement was also a "procurement for personal, professional or planning services."[121]

Here, the Court finds that Defendant's arguments that the Contract was not properly executed and that the Contract did not comply with procurement provisions of the Texas Local Government Code are without merit.  Plaintiffs have sufficiently pled that each of the five required elements necessary to show that the Contract was subject to Chapter 271 and the fifth factor regarding whether the Contract is subject to subchapter I is satisfied as the Contract was executed on behalf of the local government entity, namely Defendant.  The Contract's services, as pled, trigger both the section 252.022(a)(2) and section 252.022(a)(4) exceptions to section 252.021(a).

### vi.    Whether damages are outside the scope of section 271.152's waiver

The final argument made by Defendant pertaining to waiver of immunity is that Plaintiffs are seeking damages outside of the scope of section 271.152 and thus immunity is not waived. Defendant asserts that Plaintiffs are seeking "consequential and lost profit damages" and that it is

---

[118] *Id.* at 3; *Wight Realty Interests, Ltd v. City of Friendswood*, 433 S.W.3d 26 (Tex. App.—1st [Dist.] 2013, pet. denied).
[119] *Wight Realty*, 433 S.W.3d at 28.
[120] *Id.* at 36.
[121] *Id.*

well settled that Texas municipalities are immune from claims for these damages.[122]   However, Defendant's argument fails because Plaintiffs are not seeking consequential or lost profit damages. As pled, in the Amended Complaint, Plaintiffs seek recovery for actual damages suffered as a result of the breach of the Contract.[123]   Although Defendant accuses Plaintiffs of falsely rebranding these damages as actual damages, the Court finds that, as pled, the damages sought are to recover actual damages from the alleged breach of the Contract.

Accordingly, City of Hidalgo's Motion to Dismiss as it pertains to Rule 12(b)(1) is denied.

### E.  Standard of Review for Federal Rule of Civil Procedure 12(b)(6)

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff's complaint must clear two hurdles. First, the complaint must describe the claim in enough detail to give fair notice of the claim and the grounds for it.[124]   "[A] formulaic recitation of the elements of a cause of action will not do."[125]   Specifics are unnecessary, but some facts must support each element.[126]   Second, the complaint must state a claim "plausible on its face,"[127] meaning the plaintiff's right to relief must rise above a "speculative level."[128]   Rule 8(a)(2) requires a plaintiff to plead "a short and plain statement of the claim showing that the pleader is entitled to relief."[129]   In *Ashcroft v. Iqbal*, the Supreme Court held that Rule 8(a)(2) requires that "the well-pleaded facts . . . permit the court to infer more than the mere possibility of misconduct."[130]   "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

---

[122] ECF No. 97 at 6–7.
[123] ECF No. 95 at 11, ¶ 44.
[124] *See* FED. R. CIV. P. 8(a) (made applicable by FED. R. BANKR. P. 7008).
[125] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).
[126] *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).
[127] *Twombly*, 550 U.S. at 570.
[128] *Id.* at 555.
[129] FED. R. CIV. P. 8(a).
[130] 556 U.S. 662, 679 (2009) (quoting Rule 8(a)(2)).

defendant is liable for the misconduct alleged."[131]  "The plausibility standard is not akin to a 'prob-ability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlaw-fully."[132]

Motions to dismiss are disfavored and thus, rarely granted.[133]  When considering a motion to dismiss under Rule 12(b)(6), courts accept well-pleaded allegations as true and liberally con-strue the complaint in favor of the plaintiff.[134]  This Court reviews motions under Rule 12(b)(6) by "accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiffs."[135]  When considering a motion to dismiss under Rule 12(b)(6), the Court must assess the legal feasibility of the complaint, not weigh the evidence that might be offered in its support.[136]  The Court's consideration "is limited to facts stated on the face of the complaint and in the documents appended to the complaint or incorporated in the complaint by reference, as well as to matters of which judicial notice may be taken."[137]  And although this Court "will not strain to find inferences favorable to the plaintiff[]," [138] the facts need only be sufficient "for an inference to be drawn that the elements of the claim exist."[139]  To defeat a motion to dismiss pursuant to Rule 12(b)(6), a plaintiff must meet Rule 8(a)(2)'s pleading requirements.

**1.  Whether the Contract is void or unenforceable under Texas Constitution Article XI § 5 and §7**

---

[131] *Iqbal*, 556 U.S. at 678.

[132] *Id.* (quoting *Twombly*, 550 U.S. at 556); *see also Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009) ("A complaint does not need detailed factual allegations, but must provide the plaintiff's grounds for entitle-ment to relief - including factual allegations that when assumed to be true raise a right to relief above the speculative level.") (citations omitted).

[133] *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 570 (5th Cir. 2005).

[134] *Campbell v. Wells Fargo Bank*, 781 F.2d 440, 442 (5th Cir. 1986).

[135] *Stokes v. Gann*, 498 F. 3d 483, 484 (5th Cir. 2007) (per curiam).

[136] *Koppel v. 4987 Corp.*, 167 F.3d 125, 133 (2d Cir. 1999).

[137] *Hertz Corp. v. City of New York*, 1 F.3d 121, 125 (2d Cir. 1993).

[138] *Southland Sec. Corp. v. INSpire Ins. Solutions Inc.*, 365 F.3d 353, 361 (5th Cir. 2004) (internal quotations omit-ted).

[139] *See Harris v. Fidelity Nat'l Info. Serv (In re Harris)*, Nos. 03-44826, 08-3014, 2008 Bankr. LEXIS 1072 at *11 (Bankr. S.D. Tex. Apr. 4, 2008) (citing to *Walker v. South Cent. Bell Tel. Co.*, 904 F2d 275, 277 (5th Cir. 1990)).

Defendant asserts that Plaintiffs have failed to state a claim for which relief could be granted because Plaintiffs pled that Defendant incurred a debt on the Contract in violation of Texas Constitution Article XI sections 5 and 7, thus making the Contract void.[140]  Article XI, section 5 of the Texas Constitution provides, in part that: "[N]o debt shall ever be created by any city, unless at the same time provision be made to assess and collect annually a sufficient sum to pay the interest thereon and creating a sinking fund of at least two per cent."[141]  Article XI, section 7 provides in part: "But no debt for any purpose shall ever be incurred in any manner by any city or county unless provision is made, at the time of creating the same, for levying and collecting a sufficient tax to pay the interest thereon and provide at least two per cent (2%) as a sinking fund, . . . ."[142]

In response, Plaintiffs contend that Article XI, sections 5 and 7 are inapplicable because the Contract did not create a "debt" within the meaning of these constitutional provisions.[143]  Years ago, the Texas Supreme Court defined debt as "any pecuniary obligation imposed by contract."[144] This definition does not encompass pecuniary obligations in good faith intended to be, and lawfully, payable out of either the current revenues for the year of the contract or any other fund within the immediate control of the municipality.[145]  Further, "[t]he term 'debt' as used in these sections refers to an obligation imposed by the contract and not one imposed by law for breach of a valid contract."[146]

In *City of Tyler*, the Texas Supreme Court held that a city's thirty-year agreement with a

---

[140] ECF No. 97 at 8.
[141] TEX. CONST. art. XI, § 5.
[142] TEX. CONST. art. XI, § 7.
[143] ECF No. 96 at 6–10.
[144] *McNeal v. City of Waco*, 33 S.W. 322, 324 (Tex. 1895) (concluding that "debt" does not include any obligations to be satisfied out of current revenues or out of some fund within the municipality's immediate control).
[145] *City of Buda v. N.M. Edificios LLC*, No. 07-20-00284-CV, 2021 Tex. App. LEXIS 2895, at *17 (Tex. App.—Amarillo Apr. 16, 2021); *City of Houston v. Williams*, 353 S.W.3d 128, 139-40 (Tex. 2011).
[146] *City of Houston v. United Compost Services, Inc.*, 477 S.W.2d 349, 356 (Tex. Civ. App—Houston [1st Dist.] 1972, writ ref'd n.r.e.).

water company for water "to be delivered in the future did not create a debt against the city, but the liability of the city arose upon the use by it of the water during each year."[147]  The agreement provided the company would supply water to the city and its inhabitants and set the rate to be charged as a fixed rate per fire hydrant, the number of which would be designated by the city.[148]  Ultimately, the court found that the agreement did not create an unconstitutional debt.[149]

Similarly, the Contract here is not a debt.  Under the terms of the Contract, Defendant agreed to share in the savings received and if no savings were received, then it was not obligated to pay Promlite.[150]  Just as in *City of Tyler*, the liability arose not from the contract but from the use of what was contracted for – in this case energy savings.  When energy savings were registered, the amount due became a current expense of Defendant payable out of current revenue.  Thus, Article XI, sections 5 and 7 are inapplicable.

Accordingly, City of Hidalgo's Motion to Dismiss as it pertains to Rule 12(b)(1) is denied.

### III.  CONCLUSION

An order consistent with this Memorandum Opinion will be entered on the docket simultaneously herewith.

SIGNED January 11, 2022

_____
Eduardo Rodriguez
United States Bankruptcy Judge

---

[147] *City of Tyler v. L.L. Jester & Co.*, 97 Tex. 344, 78 S.W. 1058, 1062 (1904).
[148] *Id.* at 1059.
[149] *Id.* at 1063.
[150] ECF No. 95-2.